Sohngen, J.
Welker contends that the Industrial Commission grossly abused its discretion and acted in *467 an arbitrary manner in refusing to award him compensation on the basis of permanent and total disability, under the Workmen’s Compensation Act and particularly under rule 3 of the commission’s rules applicable in inoperable hernia cases.
Eule 3 reads as follows:
“If operation is contra-indicated on account of advanced age, heart disease or some othe;r condition compensation shall be paid according to the medical proof as in other claims.”
There is ample medical evidence in the record to support the commission’s finding that relator is suffering from a highly disabling heart and lung condition, quite apart from the hernia, which heart and lung condition is unconnected with any injury received in the course of and arising out of his employnaent. There is also ample medical evidence in the record to support the finding that relator could have engaged in useful, industrial activity and would have been impaired only to a slight degree in his earning capacity had he been suffering from only the condition of hernia. It seems clear, therefore, that the hernia being a minor element causing the disability and the true disabling cause being wholly unrelated to the injury, the commission, upon the evidence before it and in accordance with the latter part of rule 3, determined that, according to the medical proof, the relator suffered a 15 per cent disability from his hernia and, therefore, determined from the medical evidence the percentage of permanent partial disability.
In making such determination of 15 per cent permanent partial disability, the commission followed the procedure required by law. At the time of the injury in the instant case, namely, February 15, 1944, Section 1465-80, General Code (120 Ohio Laws, 455), provided as follows:
*468 “ (a) In case of injury resulting in partial disability, the employee shall receive sixty-six and two-thirds per cent of the impairment of his earning capacity during the continuance thereof, not to exceed a maximum of twenty-one dollars per week, nor a greater sum in the aggregate than four thousand dollars.
“Not earlier than forty weeks nor later than fifty-two weeks after the date of the termination of the first period of temporary total disability following the injury or not earlier than forty weeks nor later than fifty-two weeks after the date of the injury in the absence of temporary total disability, the employee may file an application with the Industrial Commission for the determination of the percentage of his permanent partial disability resulting from the injury. After notice of such determination, the employee shall elect whether compensation on account of partial disability after the expiration of such period of fifty-two weeks shall be awarded under the provisions of this paragraph (a) or under the provisions of paragraph (b) hereof. Such election shall be made in accordance with such general regulations as the Industrial Commission shall prescribe and such election, once made, shall not be changed without the consent of the employer and the Industrial Commission. If such election is not made within thirty days after the receipt of notice of. the determination of the percentage- disability or if such application for determination of the percentage of disability is not filed with the Industrial Commission before the expiration of such period of fifty-two weeks, the employee shall be deemed to have elected that compensation on account of partial disability after the expiration of such period of fifty-two weeks shall be awarded under the provisions of paragraph (b) hereof.”
Welker failed to file the application required by this section, within the proper time and thus, by his own *469 act, determined the procedure which the commission was required to follow under Section 1465-80 (b), General Code (120 Ohio Laws, 455), which procedure the commission did follow in determining the percentage of his disability.
Section 1465-80 provided further:
“(b) In all cases included in the schedule in paragraph (c) hereof, and in all cases in which the employee has elected or is deemed to have elected that compensation on account of partial disability shall be awarded under the provisions of paragraph (b) hereof, the injury shall be deemed to have resulted in permanent partial disability. In all cases of permanent partial disability, except such as are subject to the provisions of paragraph (c) hereof, the Industrial Commission shall determine the percentage of disability of the employee, after taking into consideration the extent of the physical disability, the impairment of earning capacity and the vocational handicap of the employee, and the employee shall receive sixty-six and two-thirds per cent of his average weekly wage, not to exceed a maximum of twenty-one dollars per week, for the number of weeks which equals such percentage of two hundred fifty weeks. Provided, that if the percentage of disability of the employee shall equal or exceed ninety per cent compensation for permanent partial disability shall be paid for two hundred fifty weeks, but in no case shall an award of compensation for permanent partial disability be made where the percentage of disability is ten per cent or less.”
Welker contends that the commission abused its discretion in denying to him compensation beyond 37% weeks at $21 per week, because, as he claims, it was clear that he was totally and permanently disabled. It may be that he was totally and permanently disabled, but, in a rehearing had upon application seasonably filed, the commission found that such disability *470 was not due to the hernia, but to a heart and lung condition not a result of, and unrelated to, the injury. From that order of the commission Welker filed an appeal in the Court of Common Pleas of Cuyahoga county, pursuant to Section 1465-90, General Code, in which appeal the very question whether such condition of heart and lungs was the result of an injury received in the course of and arising out of employment was put in issue. However, instead of pursuing his appeal in the Court of Common Pleas, relator chose to abandon his appeal and dismissed it. Thus he abandoned a plain, adequate and complete remedy in the ordinary course of law, and he cannot now resort to a writ of mandamus to obtain relief. A writ of mandamus will not issue where there is a plain and adequate remedy in the ordinary course of law.
Section 12287, General Code, provides as follows:
‘ ‘ The writ must not be issued in a case where there is a plain and adequate remedy in the ordinary course of the law. It may issue on the information of the party beneficially interested.”
See, also, State, ex rel. Pyles, v. Industrial Commission, 132 Ohio St., 384, 7 N. E. (2d), 800; Industrial Commission v. Phillips, 114 Ohio St., 607, 151 N. E., 769.
In our opinion, the order of the Industrial Commission, fixing the percentage of permanent partial disability at 15 per cent upon the medical evidence in the record, was correct and was not arbitrary or an abuse of discretion.
For the reasons herein stated, the writ of mandamus must be and hereby is denied.

Writ denied.

Weygandt, C. J., Turner, Matthias, Hart, Zimmerman and Stewart, JJ., concur.